UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH SHOOP, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 2:19CV96 HEA |
| ) | |
| RANDALL RAY FORQUER II, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' motion to remand this matter to the Circuit Court of Adair County [Doc. No. 25]. Defendants Amtrol, Inc.[1] and Arkema, Inc. have filed oppositions to the motion, to which Plaintiffs have replied. For the reasons set out below, Plaintiff's motion is will be granted.

**Facts and Background**

Plaintiffs Joseph Shoop ("Joseph") and Laura Shoop (collectively, "Plaintiffs") initially filed a petition (the "Original Petition") in this action in the Circuit Court of Adair County, Missouri on May 3, 2019. This case arises from an incident in 2018, when Joseph was seriously injured while exchanging the refrigerant on an outdoor air conditioning unit on Forquer's property. Plaintiffs

---

[1] Defendant Amtrol, Inc. was substituted for former Defendant Worthington Industries, Inc. for purposes of the notice of removal and motion for remand [Doc. No. 49].

have filed three petitions relating to the instant lawsuit, the Original Petition, Amended Petition, and Second Amended Petition. The Original Petition named two defendants: Randall Ray Forquer, II ("Forquer") and Arkema, Inc. ("Arkema"). Plaintiffs alleged that Plaintiffs are citizens of Missouri, that Arkema, Inc. is a Pennsylvania corporation with its principal place of business and headquarters in Pennsylvania, and that Forquer is a citizen of Missouri.

The three petitions are consistent in their factual allegations, and so this Court adopts the following summary of facts as set forth in a previous remand order by Magistrate Judge Shirley P. Mensah of this District:

> In their Petition, Plaintiffs allege the following. Plaintiff Joseph Shoop is certified in HVAC and refrigerant removal by the United States Environmental Protection Agency. On or about August 27, 2018, Defendant Forquer invited Plaintiff Joseph Shoop onto the property where he resided to exchange the refrigerant in an outdoor air conditioning unit (the "Subject Unit.") After Plaintiff Joseph Shoop connected the Subject Unit to a refrigerant cylinder (the "Subject Cylinder"), the Subject Cylinder exploded, causing serious injuries to Mr. Shoop.
>
> Plaintiffs assert claims of negligence, strict liability, and loss of consortium against Arkema, Inc., based on Arkema's design, testing, manufacturing, and/or sale of the Subject Cylinder. Plaintiffs also assert claims of negligence and loss of consortium against Defendant Forquer. In their negligence claim against Mr. Forquer, Plaintiffs state:
>
>> 37. Plaintiff Joseph Shoop was invited by Defendant Forquer onto the Subject Property with his consent to exchange refrigerant from the Subject Unit on the property.
>>
>> 38. The Subject Unit posed an unreasonable risk of harm to entrants upon the property and those exchanging the refrigerant

> in it, including Plaintiff.
>
> 39. Defendant Forquer failed to warn Plaintiff Joseph Shoop of the dangerous [sic] of the refrigerant that the Subject Unit was filled with.
>
> 40. At all times mentioned, Defendant Forquer had the duty to exercise reasonable care to protect Plaintiff Joseph Shoop against both known dangers and those that would be revealed by inspection.
>
> 41. Defendant Forquer through the exercise of ordinary care should have known that the Subject Unit posed a dangerous condition on the Subject Property.
>
> 42. Defendant Forquer failed to use ordinary care to warn of the dangerous condition on the Subject Property.
>
> 43. Defendant Forquer knew or should have known that Plaintiff Joseph Shoop would not discover such condition or realize the risk of harm.
>
> 44. As a result of Defendant Forquer's failure to warn of the dangerous condition, the Subject Cylinder exploded after it was connected to the Subject Unit, throwing Plaintiff Joseph Shoop and resulting in serious and permanent injuries to Plaintiff, including...
>
> 45. As a direct result of the dangerous condition of the Subject Unit, Plaintiff Joseph Shoop sustained the following damages:....

*Shoop v. Forquer*, No. 2:19-CV-45 SPM, 2019 WL 3777827, at *1–2 (E.D. Mo. Aug. 12, 2019) (hereinafter, "*Shoop I*").

On June 12, 2019, Arkema removed the suit, contending that jurisdiction existed under 28 U.S.C. § 1332 because (1) more than $75,000 is in controversy, (2) Plaintiffs and Arkema are diverse of citizenship, and (3) while Forquer is a Missouri citizen, his citizenship should be disregarded because he was fraudulently

joined. *Id.* at *2. Plaintiffs then moved to remand the case to state court, arguing that Arkema had not met its burden of proving that Forquer was fraudulently joined. *Id.* Judge Mensah granted Plaintiffs' motion to remand on August 12, 2019.

On November 13, 2019, Plaintiffs filed their Amended Petition in state court adding Worthington Industries, Inc. as a defendant. Amtrol, as substituted for Worthington, *see* fn. 1 *supra*, removed the action to this Court on December 31, 2019, contending that jurisdiction existed under 28 U.S.C. § 1332 because (1) more than $75,000 is in controversy, (2) diversity of citizenship exists between Plaintiffs and Defendants Amtrol and Arkema, and (3) while Forquer is a Missouri citizen, his citizenship should be disregarded because he was fraudulently joined.

Plaintiffs filed the instant motion to remand on January 24, 2020, arguing that Amtrol could not re-remove the on the same basis rejected by Judge Mensah in *Shoop I*, that Amtrol had not met its burden of proving that Forquer was fraudulently joined, and that Amtrol's Notice of Removal is defective for failure to obtain Forquer's consent to removal. In their memoranda in opposition to Plaintiffs motion to remand, Amtrol and Arkema argue that there is no reasonable basis in law or fact for Plaintiffs' negligence claim against Forquer, a similar argument to the one raised by Arkema in *Shoop I*. Amtrol and Arkema also claim that since *Shoop I*, Plaintiffs have demonstrated that they have no real intention to prosecute their claims against Forquer.

## Discussion

Defendants have the burden of demonstrating that jurisdiction exists because they removed the case to federal court. *In re Business Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1995) (per curiam). Defendants correctly argue that the citizenship of fraudulently joined defendants is disregarded when determining whether diversity of citizenship exists. *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012). The Eighth Circuit has articulated the fraudulent joinder standard as follows:

> Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent. "[I]t is well established that if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977) (emphasis added). However, if there is a "colorable" cause of action – that is, if the state law *might* impose liability on the resident defendant under the facts alleged – then there is no fraudulent joinder.

*Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (internal footnote omitted) (emphasis in original). In conducting its inquiry, the Court must "resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor," and the Court has "no responsibility to *definitively* settle the ambiguous question of state law." *Id.* at 811 (emphasis in original).

In *Shoop I*, Judge Mensah first laid out the applicable Missouri law related to liability of possessors of land upon which an invitee is injured, also known as

premises liability:

> With regard to a land possessor's liability to an invitee, the Missouri Supreme Court has adopted the approach set forth in the Restatement (Second) of Torts, § 343 (1965):
>
> When the plaintiff is an invitee, a possessor of land is subject to liability for injuries caused by a condition on the land only if the possessor
>
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>>
>> (b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and
>>
>> (c) fails to exercise reasonable care to protect them against the danger.
>
> *Harris v. Niehaus*, 857 S.W.2d 222, 225-26 (Mo. 1993) (quoting Restatement (Second) of Torts, § 343 (1965)). . . .
>
> After reciting the Restatement's standard, the Missouri Supreme Court in Harris stated:
>
>> Thus, to meet the applicable standard of care a possessor of land must (1) exercise reasonable care; (2) disclose to the invitee all dangerous conditions which are known to the possessor and are likely not to be discovered by the invitee; and (3) see that the premises are safe for the reception of a visitor, or at least ascertain the condition of the land, to give such warning that the invitee may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.
>
> *Harris*, 857 S.W.2d at 226 (citing Restatement (Second) of Torts, § 343, Comment b).

*Shoop I* at *4.

Judge Mensah proceeded to thoroughly analyze the parties' arguments regarding fraudulent joinder:

> To support its contention that Defendant Forquer has been

fraudulently joined, Defendant Arkema argues that "Plaintiffs' petition contains no facts alleging Defendant Forquer knew refrigerant was dangerous, or that said defendant had any knowledge of refrigerant or AC unit operation and maintenance.". . . However, as even the case law cited by Defendant Arkema makes clear, a plaintiff need not show that the defendant "knew" of the dangerous condition, but merely that the defendant knew "or by the exercise of reasonable care would discover" the condition and "should realize that it involves an unreasonable risk of harm to such invitees." *See Harris*, 857 S.W.2d at 225-26; *Privitera v. Coastal Mart, Inc.*, 908 S.W.2d 779, 781 (Mo. Ct. App. 1995). Plaintiffs' allegation that "Defendant Forquer through the exercise of ordinary care should have known that the Subject Unit posed a dangerous condition on the Subject Property" is sufficient to allege this element, particularly given that the Court does not focus on the artfulness of the plaintiff's pleadings in assessing fraudulent joinder.

The Court acknowledges that it seems somewhat unlikely that Plaintiffs will actually be able to prove that Mr. Forquer, in the exercise of reasonable care, would have discovered that his air conditioning unit was in a dangerous condition that involved an unreasonable risk of harm to invitees. Indeed, if the Court were evaluating Plaintiffs' complaint under Rule 12(b)(6), it would be a close question whether this claim should be dismissed for failure to contain sufficient facts to state a claim that is plausible on its face. However, the Court is not applying the Rule 12(b)(6) standard, but a less demanding one: whether Defendant Arkema has shown that [ ] there exists no reasonable basis in fact and law supporting this claim. As Plaintiffs point out in their brief, a resident might have a familiarity with his own air conditioning unit based on his own prior experiences, such as his experiences replacing refrigerant in the air conditioning unit himself, his personal observations of the air conditioning unit, or his discussions with other individuals servicing the air conditioning unit or replacing its refrigerant. Those experiences could give rise to actual or constructive knowledge of the dangers associated with the unit. Plaintiffs' assertion that this element is satisfied is not without a reasonable basis.

Defendant Arkema also argues that "Plaintiffs' Petition contains no factual allegation that Plaintiff Shoop did not know of the dangers of refrigerant, and/or was not likely to discover said condition." . . .

Defendant Arkema also points out that as a person "certified in HVAC and refrigerant removal by the United States Environmental Protection Agency," [ ] Plaintiff Joseph Shoop had been trained in topics including the risks related to refrigerant. This argument is without merit. To establish a duty to warn, Plaintiffs are not required to show that Plaintiff Shoop does not "know of the dangers of refrigerant," as a general matter, but rather that Plaintiff Shoop was not likely to discover or realize the dangers associated with the specific Subject Unit in this case and the refrigerant therein. Plaintiffs allege that "[t]he Subject Unit posed an unreasonable risk of harm to entrants upon the property and those exchanging the refrigerant in it, including Plaintiff," that "Defendant Forquer failed to warn Plaintiff Joseph Shoop of the dangerous [sic] of the refrigerant that the Subject Unit was filled with," and "Defendant Forquer knew or should have known that Plaintiff Joseph Shoop would not discover such condition or realize the risk of harm." Those allegations are sufficient to establish a reasonable basis in fact and law with respect to this element.

Defendant Arkema also argues, more generally, that it is a disparity of knowledge that creates a duty to warn an invitee of danger, and that no duty exists here because no such a disparity existed here. Specifically, Defendant Arkema argues that because Mr. Shoop's knowledge regarding HVAC systems and refrigerant was superior to that of Defendant Forquer, Defendant Forquer did not have a duty to warn Mr. Shoop of dangers associated with HVAC systems and refrigerant. This argument is insufficient to show that Plaintiffs' claim has no reasonable basis in fact or law. As discussed above, the disparity in knowledge described in *Harris* and the Restatement does not relate to a general subject matter (such as HVAC systems or refrigerant), but rather to "a condition on the land." Here, the "condition on the land" at issue is the allegedly dangerous condition of the *specific* Subject Unit and refrigerant located on Mr. Forquer's property. Although it appears likely that Mr. Shoop's knowledge of HVAC units and refrigerant, as a general matter, was superior to that of Defendant Forquer, Defendant Arkema has not shown that Mr. Shoop's knowledge of a dangerous condition of the *specific* air conditioning unit or refrigerant on Mr. Forquer's property was superior to that of Mr. Forquer. As discussed above, Plaintiffs' petition contains allegations to the contrary.

> Defendant Arkema has not directed the Court to any Missouri cases indicating that, as a matter of law, a person in possession of land who invites a person with some sort of technical expertise onto his land cannot be liable for a dangerous condition that is related to the subject matter of that technical expertise. It is certainly possible that a Missouri court could so hold, but it is not the role of this Court to make that determination assessing fraudulent joinder. *Cf. Filla*, 336 F.3d at 808 (court need not definitively settle ambiguous questions of state law in evaluating fraudulent joinder, but should "resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor").
>
> For all of the above reasons, the Court finds that Defendant Arkema has not shown that Plaintiffs' claims against Defendant Forquer have no basis in fact and law. Thus, Defendant Arkema has not established that Defendant Forquer was fraudulently joined, and his presence as a defendant in this case defeats the complete diversity requirement of 28 U.S.C.§ 1332(a).

*Shoop I* at *4–6.

The Court agrees with Judge Mensah's sound reasoning and analysis. *Filla* provides that a District Court need not settle ambiguous questions of state law and dictates that a District Court "resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." Mindful of these considerations, Judge Mensah aptly concluded that Arkema did not meet its burden in showing that Plaintiffs' claims against Forquer have no basis in fact or law.

Both Arkema and Amtrol filed briefs in opposition to the instant motion to remand. Arkema raises the same issues already ruled on by Judge Mensah in *Shoop I*. The Court finds that these arguments fail to establish that Forquer was fraudulently joined for the reasons stated by Judge Mensah in *Shoop I* as adopted

herein. Amtrol, the removing party, argues that there is no reasonable basis in fact and law for Plaintiffs' claims against Forquer because three exceptions to the premises liability rule apply to this case.

Independent contractor exceptions to premises liability

Amtrol draws its first exception from the Missouri Supreme Court's 1951 decision in *Hammond v. City of El Dorado Springs*, 362 Mo. 530, 539, 242 S.W.2d 479, 485 (1951), which provides:

> The general rule as to the liability of an owner to an independent contractor and his employees as stated by our appellate courts is the law. However, we hold that there is an exception to that rule, to-wit: An owner or contractee is not liable for injuries to, or death of, an employee of an independent contractor or the contractor himself on the ground that he furnished such employee or contractor an unsafe place to work where the employee or contractor was injured or killed because of conditions he was correcting or repairing under a contract to repair.

In *Hammond*, an independent contractor engaged in general repairs to a city's water tower was injured when the water tower's "spider rod" from which his rope sling was suspended broke. It is not clear, as required by *Filla*, that *Hammond* forecloses a premises liability claim against Forquer. As quoted above, *Hammond* does not purport to abrogate the cause of action for an owner's liability to an independent contractor, but rather states a narrow exception thereto. It is not clear that the instant alleged facts necessarily fit into the exception. For example, the petitions do not characterize exchanging refrigerant as a "repair," while

*Hammond*'s exception is limited to repairs.

Moreover, *Hammond* focuses its analysis on the existence of a "defect" that the contractor has been engaged to repair:

> Where one is engaged to repair something it necessarily implies that some defect exists. It is then the responsibility of the repairman to determine what that defect is. It does not follow that the person having the repairs made need inform the repairman what repairs are necessary *unless he desires only one specific repair made*. It is for this reason that we have experts or specialists in practically every field of endeavor, to tell us what is wrong and then remedy the defect.

*Id*. at 535, 482–83 (emphasis added). Here, the petition alleges that Joseph was hired for the specific purpose of exchanging refrigerant. There is no allegation that Forquer told Joseph he was being hired to diagnose a defect, exchange a defective refrigerant unit, or work on a broken AC unit. Rather, it is alleged that Joseph had no reason to believe any dangerous condition existed. While a Missouri court might rule that the *Hammond* exception applies here, "it is not the role of this Court to make that determination assessing fraudulent joinder." *Shoop I* at *6.

Amtrol's second exception relieves a landowner from liability when the landowner "relinquishes possession and control of the premises to an independent contractor." *Lammert v. Lesco Auto Sales*, 936 S.W.2d 846, 850 (Mo. App. E.D. 1996). In *Lammert*, an independent contractor was injured while repairing a broken garage door. *Id.* at 847–48. The Missouri Court of Appeals held that "[t]he device which caused appellant's injury was in his control and respondents are, therefore,

not liable." *Id.* at 850. On the other hand, Plaintiffs cite *Key v. Diamond Int'l Trucks*, 453 S.W.3d 352, 360 (Mo. App. W.D. 2015) in which the Missouri Court of Appeals stated, "[t]he law concerning landowner liability is that the duty of due care shifts to the independent contractor during the period of construction if the landowner relinquishes possession and control of *the premises* to the independent contractor, not the *specific instrumentality*." (Emphasis in original). Neither party cites a Missouri Supreme court case dealing with this issue. Accordingly, this Court resolves the legal ambiguity in Plaintiffs' favor, finding Amtrol has not met its burden in showing that the exception stated in *Lammert* definitively applies so as to render Plaintiffs' claims against Forquer as having no basis in fact or law.

Amtrol states the third exception as: "When a landowner relinquishes control of the premises to an independent contractor, the landowner will not be liable to the independent contractor for injuries, unless the contract [sic] can establish that 'the landowner controlled the jobsite and the activities of the contractor.' *Matteuzzi v. Columbus P'ship, L.P.*, 866 S.W.2d 128, 132 (Mo. 1993)." Amtrol proceeds to argue that Plaintiff's have not alleged that Forquer controlled the jobsite, "[n]or could Plaintiffs ever make such an allegation due to Shoop's superior knowledge from his HVAC certification from the EPA." As discussed regarding the second argued exception, this Court must resolve the ambiguity in Missouri law concerning control of the *premises* versus control of the

*specific instrumentality* in Plaintiffs' favor. Accordingly, this Court cannot find the predicate relinquishment of "control of the premises" to trigger Amtrol's third exception. This is especially true considering *Matteuzzi*, upon which Amtrol relies, dealt with a landowner engaging a contractor to perform interior and exterior renovations on the entirety of a 95-year-old rowhouse, where here, the scope of work was limited to only the air conditioning unit on Forquer's property.

The Court reiterates that it does not apply a 12(b)(6) standard in determining whether fraudulent joinder has occurred. The standard instead is whether state law *might* impose liability under the facts alleged; if so, there is no fraudulent joinder. *Filla*, 336 F.3d at 810 (emphasis in original). There is a reasonable basis to believe that a Missouri court might impose liability under the facts alleged for Plaintiffs' claims against Forquer; Amtrol has not shown that Plaintiffs' claim against Forquer has no basis in fact or law because it is necessarily subject to any of the three exceptions to premises liability Amtrol advanced. Therefore, defendant Forquer has not been fraudulently joined.

<u>Plaintiff's intent to prosecute claims against Forquer</u>

Amtrol and Arkema argue that since *Shoop I*, Plaintiffs have demonstrated that they have no real intention to prosecute their claims against Forquer. Specifically, they note that Forquer was served with process on May 23, 2019, but did not timely file an answer, ask leave of the state court to file a late answer, or

seek leave to file an answer when Arkema removed this action. Amtrol and Arkema note that at the time Amtrol removed this action on December 31, 2019, Plaintiffs had not sought entry of default nor default judgment against Forquer although he had been in default for over six months. Further, Amtrol avers that as of December 15, 2019, Forquer had not hired an attorney and stated that he did not need one. Only after Amtrol removed this action to federal court did Forquer retain counsel and file an answer. Amtrol and Arkema argue that the above facts may indicate collusion between Plaintiffs and Forquer to keep the case in state court.

Amtrol and Arkema assert that Plaintiffs have no real intention to prosecute this action against Forquer, forming valid grounds for this Court to find fraudulent joinder of Forquer and allow removal. Plaintiffs' cite *PS Kids LLC v. Paymaster Bus. Servs., Inc.*, No. 4:17CV02374 AGF, 2018 WL 999973 (E.D. Mo. Feb. 21, 2018) from this District in support of their assertion. In *PS Kids*, Judge Fleissig found that the plaintiff had no real intention to prosecute its claims against Missouri defendants where the plaintiff did not proceed to turn an order of default into a default judgment in the state action, did not move for entry of default against Missouri defendants who have been served, failed to serve another Missouri defendant, and because the Missouri defendants appeared to be judgment proof. *Id.* at \*3 (E.D. Mo. Feb. 21, 2018). Citing a Third Circuit decision, *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) and another case from this District, *Jameson v.*

*Gough*, No. 4:09CV2021 RWS, 2010 WL 716107, at *6 (E.D. Mo. Feb. 24, 2010), Judge Fleissig concluded that the Missouri defendants were fraudulently joined and could not be used to defeat diversity jurisdiction.

However, Plaintiffs note that the Eighth Circuit has not adopted a "no real intent to prosecute" element of fraudulent joinder and cites cases from this District and the Western District of Missouri in which District Courts declined to assess the plaintiff's intent to prosecute, as such an element is not included in the *Filla* standard.  *See, e.g. Glazer v. Unum Life Ins. Co. of Am.*, No. 4:18CV390 JCH, 2018 WL 3421325 (E.D. Mo. July 13, 2018), *Housley by & through Hubbard v. Dial Corp.*, No. 4:17-CV-00577-DGK, 2017 WL 3269386 (W.D. Mo. Aug. 1, 2017).

The Court finds no reason to extend the non-binding precedent cited in *PS Kids* to this case. Notably, the Missouri defendant in this action, unlike those in P*S Kids*, is not judgment-proof. The Eighth Circuit's standard for determining whether a party was fraudulently joined to defeat diversity jurisdiction, as set forth in *Filla*, does not include an intent to prosecute element, and the Court finds no need to impute one here.

## Conclusion

For the reasons discussed above, the Court does not find that defendant Forquer was fraudulently joined. Complete diversity of citizenship is lacking; thus,

the Court does not have jurisdiction under 28 U.S.C. § 1332(a). The Motion to Remand will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand, [Doc. No. 25], is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is remanded to the Circuit Court of Adair County, Missouri.

**IT IS FURTHER ORDERED** that terminated defendant Worthington Industries, Inc.'s motion to dismiss for lack of personal jurisdiction [Doc. No. 16] is **DENIED as moot**.

Dated this 1st[st] day of September, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE